## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## 1:09cv355

| | | |
|---|---|---|
| **JAMES L. GANN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| Vs. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the court pursuant to 28, United States Code, Section 636(b), pursuant a specific Order of referral of the district court, and upon plaintiff's Motion for Summary Judgment and the Commissioner's Motion for Summary Judgment. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and recommendation.

## FINDINGS AND CONCLUSIONS

## I.    Administrative History

On November 20, 1990, plaintiff filed an application for a period of disability and disability insurance benefits, alleging that he had become disabled as of October 31, 1990, Tr., at 64-66, due to problems with his back, hips, and legs. Tr., at 97. Finding that plaintiff had an impairment or combination of impairments that met Listing 1.03B (20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.03B), the Social Security

Administration found that plaintiff had become disabled as of October 31, 1990.  Tr., at 36.

On May 9, 2000, as part of the continuing disability review process, the Social Security Administration informed plaintiff that his disability continued.  Tr., at 41, 176.

On December 7, 2004, again as part of the continuing disability review process, the Social Security Administration informed plaintiff that medical improvement in his condition had occurred and that he was no longer disabled as of December 1, 2004.  Tr., at 37-40, 42-44. Plaintiff requested reconsideration of that decision.  Tr., at 58. Upon reconsideration, it was again found that medical improvement in his condition had occurred and that he was no longer disabled as of December 1, 2004.  Tr., at 47-57.  Plaintiff requested a hearing before an ALJ, Tr., at 58-60, and a hearing was held on November 26, 2007.  Tr., at 321-57.

On March 21, 2008, the ALJ issued a decision finding that plaintiff was no longer disabled as of December 1, 2004. Tr., at 13-29.

On July 30, 2009, the Appeals Council denied plaintiff's request for review, Tr., at 6-9, making the hearing decision the final decision of the Commissioner. 20 C.F.R. §§ 404.955, 404.981.

## II.  Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth.  Such findings are referenced in the substantive discussion which follows.

## III.  Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra.  Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence.  Hays v. Sullivan, supra.

## IV.  Substantial Evidence

### A.  Introduction

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the

administrative record.  The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence.  The undersigned finds that it is.

## B.    Sequential Evaluation

Typically, a five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled.  The Court of Appeals for the Tenth Circuit summarized the process, as follows:

> In evaluating an applicant's condition to determine whether a disability exists, a series of questions are asked in turn. See 20 C.F.R. 404.1520(a) etc.  If the claimant is presently pursuing work that constitutes gainful activity, then that person is not disabled, even if medically impaired. If the claimant is not presently doing substantial gainful activity, then the question is asked--does the claimant have a severe impairment which significantly limits his physical or mental ability to do basic work activities? If not, there is no disability. If the claimant has a severe impairment, then the question is asked -- does that impairment meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, and if it has lasted or can be expected to last for at least 12 months, the person is considered disabled and there is no need to proceed further. If the impairment does not meet or equal a listed impairment, then the question is asked whether the impairment, when considered along with the applicant's residual functional capacity and the physical and mental demands of the job, prevent the applicant from doing past relevant work? If not, then there is no disability. If, however, claimant can not return to past work, the final question is whether the residual functional capacity, age, education, and work experience allow the performance of other work. If not, a finding of disability will be made.

Kemp v. Bowen, 816 F.2d 1469, 1474-75 (10th Cir. 1987).

In this particular case, however, it had been previously determined that the plaintiff was disabled . Instead, the ALJ conducted a medical improvement review to determine whether plaintiff continued to be disabled under 42 U.S.C. 423(f). The statute first outlines the substantial evidence which, if shown, would justify cessation of benefits:

> A recipient of benefits under this subchapter or subchapter XVIII of this chapter based on the disability of any individual may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling only if such finding is supported by—
>
> (1) substantial evidence which demonstrates that—
> > (A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and
> >
> > (B) the individual is now able to engage in substantial gainful activity; or
>
> (2) substantial evidence which—
> > (A) consists of new medical evidence and a new assessment of the individual's residual functional capacity, and demonstrates that—
> > > (i) although the individual has not improved medically, he or she is nonetheless a beneficiary of advances in medical or vocational therapy or technology (related to the individual's ability to work), and
> > > (ii) the individual is now able to engage in substantial gainful activity, or
> > (B) demonstrates that—

(i) although the individual has not improved medically, he or she has undergone vocational therapy (related to the individual's ability to work), and

(ii) the individual is now able to engage in substantial gainful activity; or

(3) substantial evidence which demonstrates that, as determined on the basis of new or improved diagnostic techniques or evaluations, the individual's impairment or combination of impairments is not as disabling as it was considered to be at the time of the most recent prior decision that he or she was under a disability or continued to be under a disability, and that therefore the individual is able to engage in substantial gainful activity; or

(4) substantial evidence (which may be evidence on the record at the time any prior determination of the entitlement to benefits based on disability was made, or newly obtained evidence which relates to that determination) which demonstrates that a prior determination was in error.

42 U.S.C. § 423(f)(1)-(4).  The statute then goes on to specify the scope of the evidence which the ALJ must consider, as well as the sources of such evidence:

Any determination under this section shall be made on the basis of all the evidence available in the individual's case file, including new evidence concerning the individual's prior or current condition which is presented by the individual or secured by the Commissioner of Social Security. Any determination made under this section shall be made on the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled.

42 U.S.C. § 423(f).

In furtherance of such statute, the relevant regulations provide that the Commissioner must determine that there has been medical improvement in the claimant's condition which is related to the claimant's ability to work in order to find that disability has ceased. 20 C.F.R. §§ 404.1594(a), (c). Such regulation reflects the statutory requirement that, if a claimant is entitled to disability benefits, his or her continued entitlement to such benefits must be reviewed periodically. 20 C.F.R. §404.1594(a). Medical improvement is defined as

> [a]ny decrease in the medical severity of [a claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant] was disabled or continued to be disabled.

20 C.F.R. § 404.1594(b)(1). Where medical improvement review is conducted, the most recent favorable medical decision is referred to as the "comparison point decision" or "comparison point date" (hereinafter "CPD"). In this case, the CPD was May 9, 2000. Tr., at 41, 176.

In conformity with the statute, the regulations go on to establish an eight-step sequential process for evaluating a beneficiary's continued entitlement to disability benefits. If sufficient evidence at any step of this process shows that a beneficiary still cannot engage in substantial gainful activity, the review process ceases and benefits are continued. 20 C.F.R. § 404.1594(f). The eight steps, in relevant part, are, as follows:

(1)     Is the beneficiary engaging in substantial gainful activity?  If he or she
        is, the Commissioner will find the disability has ended.

20 C.F.R. § 404.1594(f)(1).

(2)     The Commissioner determines whether the beneficiary has an
        impairment or combination of impairments that meets or equals the
        severity of an impairment listed in Appendix 1 of the regulations.  If the
        beneficiary does, his disability will be found to continue.

20 C.F.R. § 404.1594(f)(2).

(3)     The Commissioner determines whether the beneficiary has experienced
        any medical improvement.  If there has been medical improvement as
        shown by a decrease in medical severity, the Commissioner proceeds to
        Step Four.  If there has been no decrease in medical severity, the
        Commissioner proceeds to step five.

20 C.F.R. § 404.1594(f)(3).

(4)     The Commissioner determines whether medical improvement is related
        to the beneficiary's ability to do work; i.e., whether there has been an
        increase in the residual functional capacity.  If medical improvement is
        not related to the ability to do work, the Commissioner proceeds to Step
        Five.  If medical improvement is related to the beneficiary's ability to do
        work, the Commissioner proceeds to step six.

20 C.F.R. § 404.1594 (f)(4).

(5)     If the Commissioner found no medical improvement at step three or if
        the Commissioner found at step four that the medical improvement is not
        related to the ability to work, the Commissioner considers whether any
        of the exceptions to the medical improvement standard apply.  If none of
        them apply, disability will be found to continue.

20 C.F.R. §§ 404.1594(d), (e) and (f)(5).

(6)     If medical improvement is shown to be related to the beneficiary's ability to work, the Commissioner determines whether all of the beneficiary's current impairments in combination are severe.  If the beneficiary has a severe impairment, the Commissioner proceeds to step seven.  If the beneficiary does not have a severe impairment, he will be found no longer disabled.

20 C.F.R. § 404.1594(f)(6).

(7)     The Commissioner assesses residual functional capacity and, based on all of the current impairments, considers whether the beneficiary can still do work that he did in the past.  If the beneficiary can still do such work, disability will be found to have ended. Otherwise, the Commissioner proceeds to Step Eight.

20 C.F.R. § 404.1594(f)(7).

(8)     The Commissioner considers whether the beneficiary can do other work, given his or her residual functional capacity, age, education, and past work experience.  If the beneficiary can do such other work, disability will be found to have ended.  If the beneficiary cannot, disability will be continued.

20 C.F.R. § 404.1594(f)(8).

Under the regulations, "medical improvement" is defined as any decrease in the medical severity of the claimant's previously disabling impairments; a determination that there has been a decrease in medical severity must be based on improvements in the symptoms, signs and/or laboratory findings associated with such impairments.  20 C.F.R. § 404.1594(b)(1).  If medical improvement is related to the ability to work, a beneficiary's residual functional capacity becomes a factor in determining whether he or she can engage in substantial gainful activity.  20 C.F.R. § 404.1594(c)(2).  The

determination of whether a beneficiary can engage in substantial gainful activity involves consideration of all current impairments, the beneficiary's residual functional capacity, and vocational factors such as age, education, and work experience. 20 C.F.R. § 404.1594(b)(5).

The ALJ decided plaintiff's continued entitlement to disability benefits at the Eighth Step of the sequential evaluation process. Tr., at 28-29.

### C. The Administrative Decision

At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity since May 9, 2000, the CPD. Tr., at 18. The ALJ also found that, at the time of the CPD, Plaintiff suffered from bilateral congenital hip dysplasia which met Listing 1.03B of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Tr., at 18.

At Step Two, the ALJ found that, as of December 1, 2004, plaintiff no longer had an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Tr., at 26.

At Step Three, the ALJ found that medical improvement had occurred as of December 1, 2004. Tr., at 18-19.

At Step Four, the ALJ determined that the medical improvement was related to plaintiff's ability to work. Tr., at 19. With such a finding, the ALJ was required to

skip Step Five and proceed to Step Six. <u>See</u> 20 C.F.R. § 404.1594(f)(4). In relation to Step Four, the ALJ found that, after the CPD, plaintiff had developed the additional severe impairments of status post bilateral hip replacement, episodic gout, and episodic bilateral ankle pain due to degenerative joint disease. Tr., at 18.

At Step Six, the ALJ went on to find that plaintiff's impairments as of December 1, 2004, were severe in combination. Tr., a 19.

At Step Seven, the ALJ assessed plaintiff's residual functional capacity (hereinafter "RFC") and found that, as of December 1, 2004, plaintiff could perform: light work involving no climbing of ladders, ropes, or scaffolds; only occasional climbing of ramps and stairs; and frequent postural activities. Tr., at 19. He further found that plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and hazards. Tr., at 19. The ALJ found that plaintiff had no past relevant work.

At Step Eight, the ALJ concluded that plaintiff could have performed a significant number of jobs existing in the national economy, given his RFC. Tr., at 28-29. The ALJ concluded that plaintiff was no longer disabled as of December 1, 2004.

### D. Discussion

### 1.    Plaintiff's Assignments of Error

The plaintiff's statement of issues and the Commissioner's statement of issues are nearly identical. Where the issues or assignments of error are, as they are here, stated concisely, the court uses plaintiff's assignments of error as a guide for judicial review.  Plaintiff has made the following assignments of error:

I.      Whether the ALJ's finding that plaintiff no longer meets a listing is supported by substantial evidence.

II.     Whether the ALJ erred in finding medical improvement.

III.    Whether the ALJ erred by failing to consider knee condition, cervical spondylosis, bursitis/tendinitis in right shoulder, arthritis in left hand, osteopenia, lack of educational attainment, and obesity at Steps Two or Six of the Eight-Step Sequential Evaluation.

IV.     Whether the ALJ erred at Step Seven by Misapplying the Fourth Circuit's Standard for Evaluation of Pain.

V.      Whether the Appeals Council's decision to deny review is supported by substantial evidence.

Plaintiff's Brief, at 3-4. Plaintiff's assignments of error will be discussed seriatim.

### 2.    First Assignment of Error

In the First Assignment of Error, plaintiff contends that  the ALJ's finding that plaintiff no longer meets a listing is not supported by substantial evidence.  In order for an impairment to meet or equal a listing, it must satisfy all of the relevant listing's criteria. An impairment that manifests only some of the criteria of a listing, no matter

how severe such impairment may be, does not qualify. 20 C.F.R. § 404.1525(d); 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00A.

The relevant listing in this case is Listing 1.03B, which requires in relevant part as follows:

> Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.03B. The key issue raised by plaintiff is his ability to ambulate effectively, and Listing 1.00(B)(2)(b) goes on to provide as to that issue as follows:

> Ineffective ambulation is defined generally as having insufficient lower extremity functioning ... to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.
>
> ****
>
> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk . . . a block at a reasonable pace on rough or uneven surfaces.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00(B)(2)(b). As described, effective ambulation not only involves the legs, but the use of one's arms: thus, one may

effectively ambulate where a single cane aids walking, but not where a person requires two crutches or a walker to ambulate.

Here, plaintiff contends that he continued to have an impairment or combination of impairments that met or equaled Listing 1.03B as of December 1, 2004. Plaintiff's Brief, at 6-9. Plaintiff first argues that the ALJ failed to consider the fact that he was issued a handicapped parking placard, a fact that he testified to at the hearing. Tr., at 326-27. Even if the court were to assume that plaintiff had such placard issued to him during the relevant time period ending December 1, 2004, such is not *per se* evidence that a person cannot effectively ambulate as North Carolina law allows issuance of such placard to persons who simply need one cane to walk. N.C.Gen.Stat. § 20-37.5. Likewise, plaintiff's use of a single cane to get to the hearing (nearly three years after the relevant time period closed) does not meet the criteria of § 1.00(B)(2)(b).

The appropriate question on review is whether the ALJ properly weighed all the evidence of record and determined that plaintiff no longer had an impairment or combination of impairments that met or equaled Listing 1.03B as of December 1, 2004. While plaintiff's use of a cane and his being issued a placard is some evidence that could be favorable to his position, review of all the evidence reveals that on November 4, 2004, plaintiff told the North Carolina Disability Determination Services that:

> He is able to walk unassisted....Will have ankle pain when gout flares or
> he does a good deal of walking.  Can walk around the Wal-Mart to shop
> for needed items.  Goes for what he needs and then gets out.

Tr., at 117.  From this evidence, it would have been reasonable for the ALJ to infer

that one who is capable of doing a "good deal" of walking is able to "sustain[] a

reasonable walking pace over a sufficient distance [in order] to carry out activities of

daily living." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00(B)(2)(b).  Likewise,

such statement, made at a time in close temporal proximity to December 2004,

provides substantial support to a conclusion that plaintiff no longer needed assistive

devices that involved both arms to ambulate.  While plaintiff argues that his statement

he "goes for what he needs and then gets out" undermines a determination that he was

able to effectively ambulate, Plaintiff's Brief,  at 7, the undersigned cannot find that

such an interpretation is mandated, especially when such statement is viewed in

context with other evidence of record.  Unlike the short distances one might expect

to cover in a convenience store, it well within the realm of reason for one to infer that

even "getting what one needs in a Wal-Mart and then getting out" requires substantial

walking, which is comparable to the one-to-two hundred meters in a typical city block.


Even it one were to set aside the walking required to even "get what one needs"

at Wal-Mart, side-by-side comparison of the consultative examination conducted by

Dr. Carol Jean Smith on March 27, 2000, with that conducted by Dr. Barbara Dubiel on November 11, 2004, provides substantial evidence that while plaintiff was not effectively ambulating in 2000, by 2004 he was able to effectively ambulate.

Evidence of record from the 2000 consultative evaluation provides in relevant part as follows:

(1)     plaintiff reported to Dr. Smith that he still used crutches occasionally, and Dr. Smith found that crutches were in fact medically necessary at times. Tr., 167, 171. Thus, in 2000, plaintiff's ambulation involved both arms;

(2)      plaintiff also reported to Dr. Smith that he could not walk more than 50 yards and that when he woke in the morning, he had to take small steps and hold onto his bed until he could get his leg movement started. Tr., at 167. He further stated that he only walked on an occasional basis and that he could stand for only 5 to 10 minutes, Tr., at 168; and

(3)     Dr. Smith clinically observed plaintiff walking with a limp in both legs and noted stiffness in his hips, feet, and ankles upon examination. Tr., at 171. His patellar reflexes were 1/4 and his Achilles reflexes were

absent. Tr., at 171. Plaintiff was able to stand on his heels, but not on his toes, and he was not able to squat or rise due to hip stiffness. Tr., at171.

Evidence of record from the 2004 consultative evaluation provides in relevant part as follows:

(1)     plaintiff reported to Dr. Dubiel that he could walk for 30 minutes and that he only had ankle pain when walking uphill. Tr., at 199-200. Walking on level ground did not pose such a problem. Tr., at 200. Plaintiff also told Dr. Dubiel that he could stand for 20 minutes, Tr., at 199; and

(2)     Dr. Dubiel clinically observed that plaintiff did not walk with a limp. Tr., at 202. His patellar reflexes were +2, as were his Achilles reflexes. Tr., at 202. His sensation was intact, Tr., at 202, and he was able to walk on both his heels and toes, and could do a full squat and rise with one hand on the examination table for support. Tr., at 202.

There is also evidence of record developed after the date under review. In a consultative examination with Dr. Il Sung Lee on October 26, 2005, Tr., 226-230 (which post-dates the relevant time period at issue), plaintiff told Dr. Lee that he was able to walk one city block.[1] Tr., at 227. Such statement is consistent with the ability

---

[1]     According to Wikipedia, "A city block (in most US cities) is between 1/16 and 1/8 mi (0.1 and 0.2 km). In Manhattan, the measurement "block" usually refers to a north-south

to effectively ambulate.  See 20 C.F.R. Part 404, Subpart P, Appendix 1, §

1.00(B)(2)(b) (ineffective ambulation includes the inability to walk a city block). Dr.

Lee also noted that plaintiff did not limp and found that no assistive devices were

medically necessary for even occasional balance or ambulation.  Tr., at 227.  Further,

the consulting agency physicians who reviewed plaintiff's medical records concluded

that he could perform light work, Tr. 206-223, which is consistent with the ALJ's

determination and provide additional support. Gordon v. Schweiker, 725 F.2d 231,

235 (4th Cir. 1984) (opinion of a non-examining physician can constitute substantial

evidence in support of the ALJ's decision when it is consistent with the record).

Substantial evidence supports the ALJ's determination that plaintiff was able

to effectively ambulate as of December 1, 2004, and that he thus no longer had an

impairment or combination of impairments that met or equaled Listing 1.03B as of

that date.

### 3.      Second Assignment of Error

In his Second Assignment of Error, plaintiff contends that the ALJ erred in

finding medical improvement.  To be upheld on review, the ALJ's finding of medical

_____

block, which is 1/20 mi (0.08 km)."
See http://en.wikipedia.org/wiki/List_of_unusual_units_of_measurement#Block (retrieved on
July 29, 2010).

improvement must be supported by substantial evidence, and the undersigned finds that it is so supported. As mentioned above, "medical improvement" is defined as any decrease in the medical severity of the claimant's previously disabling impairments and a determination that there has been a decrease in medical severity must be based on improvements in the symptoms, signs and/or laboratory findings associated with such impairments. 20 C.F.R. § 404.1594(b)(1). The undersigned incorporates the side-by-side comparison of the consultative reports done by Dr. Smith in 2000 and the consultative report done by Dr. Dubiel in 2004, which provides substantial evidence supporting the ALJ's finding of medical improvement. Plaintiff's report to Dr. Lee and Dr. Lee's conclusions also provide evidence supportive of the ALJ's determination. Where as here a comparison point decision is based on the fact that a claimant had an impairment or impairments that met or equaled a listing and the claimant ceases to have an impairment(s) that met or equaled a listing, the medical improvement is related to the claimant's ability to work. See 20 C.F.R. § 404.1594(c)(3)(i). The undersigned finds the ALJ's finding of medical improvement to be supported by substantial evidence.

### 4. Third Assignment of Error

In his Third Assignment of Error, plaintiff contends that the ALJ erred by failing to consider his knee condition, cervical spondylosis, bursitis/tendinitis in right

shoulder, arthritis in left hand, osteopenia, lack of educational attainment, and obesity at Steps Two or Six of the eight-step sequential evaluation process. Plaintiff's Brief, at 10-14.

At Step Two, the Commissioner determines whether the beneficiary has an impairment or combination of impairments that meets or equals the severity of an impairment listed in Appendix 1 of the regulations. If the beneficiary does, his disability will be found to continue. 20 C.F.R. § 404.1594(f)(2). At Step Six, if medical improvement is shown to be related to the beneficiary's ability to work, the Commissioner determines whether all of the beneficiary's current impairments in combination are severe. If the beneficiary has a severe impairment, the Commissioner proceeds to step seven. If the beneficiary does not have a severe impairment, he will be found no longer disabled. 20 C.F.R. § 404.1594(f)(6). Severity of an impairment is a threshold determination:

> An impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work irrespective of age, education, or work experience.

Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984)(citations omitted). Put another way, a severe impairment is one which significantly limits an individual's ability to do basic work activities. 20 C.F.R. § 404.1520(c).

In a medical improvement case, the only impairments considered through Step Five of the sequential evaluation process are those impairments that were present at the 2000 CPD. 20 C.F.R. §§ 404.1594(b)(1)-(4) and (7), 404.1594(c), 404.1594(f)(1)-(5). Those impairments that developed after the CPD are not considered until Step Six. 20 C.F.R. §§ 404.1594(b)(5), 404.1594(f)(6). When considered at Step Six, such new impairments are only considered to determine their impact on a claimant's RFC through the date of the cessation decision, December 1, 2004.

### A.    Knee Impairments

First, plaintiff contends that the ALJ failed to consider his knee impairments at Steps Two or Six. The record is, however, devoid of complaints of knee impairments either at the 2000 CPD or at the time the 2004 cessation decision was made. Indeed, the relevant evidence is that very near the date of cessation, Dr. Dubiel clinically observed in November 2004 that plaintiff had a full range of motion in both knees and could squat and rise. Tr., at 202. Thus, the ALJ properly did not consider any knee impairment because there was no evidence which required such consideration either at the Second or Sixth Step of the sequential evaluation process.

### B.    Back Pain, Bursitis, Wrist Pain, Osteopenia, Obesity, and Illiteracy

Next, plaintiff contends that the ALJ failed to properly consider his back pain, right-shoulder bursitis, left wrist pain, osteopenia, obesity, and illiteracy.

Evidence contained in the administrative record provides that during the relevant time period, plaintiff had a non-tender back. Tr., at 202, and a full range of motion in both shoulders. Tr., at 202. It also shows that his bursitis was nearly resolved, Tr., at 214, 224, 278.

Plaintiff also appears to have complained about some pain in his left wrist during the relevant time period, but it is unclear whether this was due to gout (which the ALJ found was a severe impairment) or arthritis. Tr., at 167-168. Simply being diagnosed with an impairment does not mean that the impairment is severe. <u>Higgs v. Bowen</u>, 880 F.2d 860, 863 (6th Cir. 1988). There is no evidence that plaintiff had any limitations attributable to such an impairment of his wrist, as he could grip and otherwise manipulate objects without problem upon examination with Dr. Dubiel. Tr., at 202.

The record also reflects that plaintiff had osteopenia in his ankles during the relevant time period, but it was rated as mild to moderate in nature. Tr., at 205. The ALJ did find that plaintiff had the severe impairment of degenerative joint disease in his ankles. Tr., at 18. There is no evidence, however, that plaintiff's osteopenia limited him in any way greater than found by the ALJ during the relevant time period.

As to plaintiff's contention that the ALJ failed to properly consider his obesity, the record indicates that while plaintiff may have been mildly obese at the time of the 2000 CPD, Tr., at 170, he actually lost weight by the time of the cessation decision. Tr., 201. Review of the record reveals no diagnosis of obesity and plaintiff neither complained to the ALJ or any of the doctors that he was disabled because he was obese. Social Security Ruling 02-1p discusses how obesity should be addressed in a disability determination, noting:

> The Clinical Guidelines recognize three levels of obesity. Level I includes BMIs [body mass index] of 30.0-34.9. Level II includes BMIs of 35.0-39.9. Level III, termed "extreme" obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40. These levels describe the extent of obesity, but they do not correlate with any specific degree of functional loss.

S.S.R.02-1p. At the time of the CPD, plaintiff was nearly 5' 3" tall and weighed 178 pounds, giving him a BMI of 31.8. At the time of the cessation decision, he was 5' 3" tall and weighed 168 pounds, giving him a BMI of 29.8. Thus, at the time of cessation plaintiff was not an obese individual. Even assuming that S.S.R. 02-1p would require the ALJ to consider plaintiff's alleged obesity, plaintiff has failed to identify any functional limitations attributable to his supposed obesity or how such alleged obesity impacted other impairments. It cannot, therefore, be error for the ALJ to not consider an impairment that did not exist, was not diagnosed, and was not complained of to doctors or to the administration.

Plaintiff also contends that the ALJ erred in not considering his illiteracy. Illiteracy is not, however, an impairment, but is instead a vocational factor that is considered when determining whether there are other jobs in the national economy that a claimant can perform. 20 C.F.R. § 404.1564(b)(1). The ALJ was not required to consider plaintiff's illiteracy as an impairment, either severe or non-severe. In any event, even an illiterate individual with no prior work experience would be found not disabled under the applicable medical-vocational guidelines. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2, Rules 202.16-202.22, at Rule 202.16. Further, the vocational expert (hereinafter "VE") was aware of plaintiff's vocational background and illiteracy, but testified that there were a significant number of jobs in the national economy that Plaintiff could perform given the RFC ultimately found by the ALJ. Tr., at 346-48.

While plaintiff has taken issue with the consideration of a number of impairments found not to be severe in this assignment of error, when an ALJ finds at least one severe impairment, all impairments, both severe and non-severe, are considered in assessing a claimant's RFC. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2); SSR 96-8p. "[T]he question of whether the ALJ characterized any other alleged

impairment as severe or not severe is of little consequence." <u>Pompa v. Comm'r of Social Security</u>, 2003 WL 21949797, at *1 (6th Cir. Aug. 11, 2003).[2]

\* \* \*

Because plaintiff has failed to demonstrate how any of the above-noted impairments resulted in work-related limitations greater than those actually found by the ALJ during the relevant time period, this assignment of error is not a basis for remand.

### 5.    Fourth Assignment of Error

In his Fourth Assignment of Error, plaintiff contends that the ALJ erred at Step Seven by Misapplying the Fourth Circuit's standard for evaluation of pain.  At the Seventh Step of the sequential evaluation process, the Commissioner assesses residual functional capacity and, based on all of the current impairments, considers whether the beneficiary can still do work that he did in the past.  If the beneficiary can still do such work, disability will be found to have ended. Otherwise, the Commissioner proceeds to Step Eight.   In making such determination, the Commissioner must, necessarily, consider plaintiff's testimony and other evidence  concerning his subjective complaints, including pain.  Plaintiff contends that the ALJ failed to

---

[2]    Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

properly assess his credibility as it concerned his subjective complaints of pain, Plaintiff's Brief, at 14-17, and failed to apply the correct standard for evaluating pain in the Fourth Circuit, but instead required a "direct tie between the objective medical findings and a specific level of pain."  Plaintiff's Brief, at 15.

The correct standard and method for evaluating claims of pain and other subjective symptoms in the Fourth Circuit has developed from the Court of Appeals' decision in Hyatt v. Sullivan, 899 F.2d 329 (4th Cir. 1990)(Hyatt III), which held that " [b]ecause pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative."  Id., at 336.  A two-step process for evaluating subjective complaints was developed by the Court of Appeals for the Fourth Circuit in Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).  This two-step process for evaluating subjective complaints corresponds with the Commissioners relevant rulings and regulations. See 20 C.F.R § 404.1529; SSR 96-7p.[3]

Step One requires the ALJ to determine whether there is "objective medical evidence showing the existence of a medical impairment which could reasonably be

_____

[3]  "The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision."  S.S.R. 96-7p (statement of purpose).

expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 594.

Step Two requires that the ALJ next evaluate the alleged symptoms' intensity and persistence along with the extent to they limit the claimant's ability to engage in work. Id., at 594; see also 20 C.F.R. § 404. 1529(c); SSR 96-7p. The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment. Craig, 76 F.3d at 595; 20 C.F.R. § 404. 1529(c); SSR 96-7p. The term "other relevant evidence" includes: a claimant's activities of daily living; the location, duration, frequency and intensity of their pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medications taken to alleviate their pain and other symptoms; treatment, other than medication, received; and any other measures used to relieve their alleged pain and other symptoms. Id.

Review of the ALJ's decision reveals that he adhered to the requirements of Craig. The ALJ found that, while the objective medical evidence did support a finding that plaintiff suffered from some amount of pain, it did not support a

conclusion that he suffered from pain in such a degree that he was precluded from working.  Tr., at 26-27. Substantial evidence supports such finding.

The ALJ did not, as plaintiff's argument suggest, stop with his consideration of the objective medical evidence. Instead, the ALJ went on to properly consider plaintiff's statements regarding the intensity, persistence, and limiting effects of plaintiff's symptoms; his treatment history; his medications and the efficacy of those medications; and his activities of daily living. 20 C.F.R. § 404.1529(c)(3).   The ALJ noted gaps in plaintiff's treatment record, the fact that he did not require narcotic pain medication, and the fact that he could engage in a wide range of activities, including occasional hunting and fishing.  Tr., at 26-27, 117, 168, 199-201, 354-355.[4] This evidence provides substantial support for the ALJ's credibility determination.

Such consideration of daily activities is precisely the type of evaluation required under current case law. In considering an almost identical method of evaluating pain in <u>Mickles v. Shalala</u>, 29 F.3d 918 (4th Cir. 1994),  Honorable K. K. Hall, former Circuit Judge (now deceased), in announcing and concurring in the judgment of the Court of Appeals for the Fourth Circuit, held:

> This refreshing mode of analysis is precisely what I believe our cases have been striving for.  The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life.

---

[4]      The undersigned finds that the ALJ properly excluded from consideration the materials found at 126 through 128 of the administrative record.

Id., at 927. In accordance with Mickles, the ALJ properly discredited plaintiff's subjective complaints of pain. Substantial evidence supports the ALJ's determinations.

In Hatcher v. Secretary, 898 F.2d 21, 23 (4th Cir. 1989), the Court of Appeals for the Fourth Circuit held that

> it is well settled that: "the ALJ is required to make credibility determinations--and therefore sometimes make negative determinations--about allegations of pain or other nonexertional disabilities. . . . But such decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge, . . . and it is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process."

Id., (quoting Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985) (citations omitted)). Substantial evidence supports the ALJ's determinations.

As a subcontention, plaintiff takes issue with the ALJ's consideration of the callouses and thickened skin on plaintiff fingers and palms and the ground-in dirt on his fingers in determining plaintiff's credibility. Plaintiff's Brief, at 20. The condition was noticed by Dr. Dubiel and is referenced in her notes. Tr., at 202. Plaintiff argues that engaging in manual labor is not the only cause of such condition, in that thickened skin can be attributed to a condition called "mechanic's hands." Plaintiff's Brief, at 20. Accepting that such a condition exists, plaintiff has not pointed to any medical record that shows plaintiff suffered from such condition or explained away the ground

in dirt observed by Dr. Dubiel. Indeed, the only evidence of record is antithetical to plaintiff's argument: when Dr. Dubiel questioned plaintiff about the condition of his hands during the 2004 evaluation, he stated that he did "a few little things." Tr., at 201. Thus, it was quite appropriate for the ALJ to note and comment upon the observations of Dr. Dubiel and include and consider such observations in the overall evaluation of the credibility of the individual's statements. Tr., at 24. Based on all the evidence of record, the ALJ's conclusion that plaintiff was performing more activities than he had alleged is well supported by substantial evidence. Tr., at 27.

### 6.    Fifth Assignment of Error

In the Fifth Assignment of Error, plaintiff contends that the Appeals Council improperly denied review of his additional evidence. Plaintiff's Brief, at 17-21. Review of the decision of the Appeals Council reveals that they did consider the evidence submitted by plaintiff and found that it did "not provide a basis for changing the decision." Tr., at 7. When, as here, the Appeals Council incorporates evidence into the administrative record, a reviewing court must consider that evidence along with the evidence that was presented to the ALJ in determining whether his decision was supported by substantial evidence. Wilkins v. Secretary of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991).

> The Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review "if the additional

evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Williams*, 905 F.2d at 216. FN3 Evidence is new within the meaning of this section if it is not duplicative or cumulative. *Id.; see generally Associate Comm'r of Hearings and Appeals, Social Security Admin.*, Pub. No. 70-074, *Hearings, Appeals, Litigation, and Law (LEX) Manual*, § I-3-306(A) (1990). Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. *See Borders v. Heckler*, 777 F.2d 954, 956 (4th Cir.1985).

Id., at 95-96.

The evidence submitted by plaintiff to the Appeals Council in this case was neither material nor related to the relevant time period, which ended on December 1, 2004. The evidence in closest temporal proximity to the cessation date consists of a report dated October 13, 2005, Tr., at 293, and another dated November 7, 2005. Tr., at 294. Both reports are from the Buncombe County Health Center.

The report from October 13, 2005, states that plaintiff had not been seen in more than two years and that he was seeking medication for a flare of gout. Tr., at 293. The report is nearly one year past the relevant date in this case and comes nearly two years after plaintiff's last visit. Thus, such report is neither material or relevant to the time period at issue.

The report from November 7, 2005, provides that plaintiff was complaining about right shoulder pain, but notes that he had recently fallen. Tr., at 294. Similarly,

such report, which indicates that plaintiff had re-injured his right shoulder nearly a year after the cessation date is neither material or relevant to the time period at issue.

As to the remainder of the reports submitted to the Appeals Council, they all post-date the two reports discussed herein and are, similarly, neither material nor relevant to the time period at issue.

### E.    Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. See Richardson v. Perales, supra; Hays v. Sullivan, supra. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra, the undersigned must recommend to the district court that plaintiff's Motion for Summary Judgment be denied, the Commissioner's Motion for Summary Judgment be granted, and that the decision of the Commissioner be affirmed.

**RECOMMENDATION**

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that

(1)     the decision of the Commissioner, denying the relief sought by plaintiff, be **AFFIRMED**;

(2)     the plaintiff's Motion for Summary Judgment (#7) be **DENIED**;

(3)     the Commissioner's Motion for Summary Judgment (#9)be **GRANTED**; and

(4)     this action be **DISMISSED**.


## Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: September 1, 2010

Dennis L. Howell
United States Magistrate Judge